Appendix 2

# International Prisoner Transfer

**Michael Abbell**
Former Director
Office of International Affairs
Criminal Division
U.S. Department of Justice

 Transnational Publishers, Inc.
Ardsley, New York

Published and distributed by *Transnational Publishers, Inc.*
Ardsley Park
Science and Technology Center 410 Saw Mill River Road
Ardsley, NY 10502

Phone: 914–693–5100
Fax: 914–693–4430
E-mail: info@transnationalpubs.com
Web: www.transnationalpubs.com

This volume is intended to provide accurate information in regard to the subject matter. It is sold with the understanding that the publisher is not rendering legal service or counsel. If legal advice is required, the services of a competent attorney should be obtained.

**Library of Congress Cataloging-in-Publication Data**

Abbell, Michael.
   International prisoner transfer / Michael Abbell.
      p. cm.
   Includes index.
   ISBN 1–57105–217–8
      1. Prisoners—Legal status, laws, etc.—United States.   2. Repatriation—United States.   3. Imprisonment—United States.   4. Prisoners—Legal status, laws, etc.   5. Repatriation.   6. Imprisonment.   I. Title.
KF9225 .A915  2001
344.73'0356—dc21                                        2001043639

Copyright © 2001, 2002, 2004 by Transnational Publishers, Inc.

All rights reserved. This book may not be reproduced, in whole or in part, in any form (beyond that copying permitted by U.S. Copyright Law in Section 107, "fair use" in teaching and research, Section 108, certain library copying, and except in published media by reviewers in limited excerpts), without written permission from the publisher.

Manufactured in the United States of America

[December 2004]

Each state has established its own unique procedures for approval of transfers. Therefore, an attorney representing a foreign national convicted of a state offense should contact the appropriate state authority to pursue the approval of his client's transfer request. Frequently, that authority is named in the applicable state implementing legislation. In addition, the IPTU maintains a list of the state authorities with whom it deals in prisoner transfer matters. This information can be obtained on the Internet at www.usdoj.gov/criminal/oeo or by calling the IPTU at 202-514-3684.

If a state authority approves the transfer of a state offender convicted in that state, the IPTU ordinarily will also approve the offender's transfer. In this regard, the IPTU has taken the position that the transfer of such an offender is primarily the concern of the affected state, not of the federal government. However, there are a number of situations in which the IPTU may refuse to approve such a transfer. Among these reasons are:

- The offender fails to meet one or more of the transfer eligibility requirements mandated by the applicable treaty.

- The offender is the subject of an active investigation by federal authorities or the authorities of another state.

- The offender is needed as a witness in a pending federal criminal investigation or prosecution or a pending criminal investigation or prosecution in another state.

- The offender has previously transferred from the United States.

- The offender has repeatedly, illegally entered the United States, or has been deported, and reentered—particularly where such an offender has substantial family and social ties in the United States.

## §7-5    Review of Disapproval by United States of Request to Transfer

Whereas the prisoner transfer treaty implementing legislation explicitly deals with the authority of United States courts to consider challenges to federal and state convictions after the transfer of an offender from the United States[1] and to consider challenges to the validity and legality of the transfer of such an offender from this country,[2] it is silent with respect to the authority of the courts to

---

[1] See §5-5(1), supra.
[2] See §5-5(2), supra.

## §7-5   Transfer from United States: Operation in Practice

review decisions by the Department of Justice to refuse to approve the transfer of a foreign offender who was convicted in the United States to his country of nationality for service of the remainder of his sentence. This silence raises the question whether there is any way in which such an offender can obtain judicial review of the United States' refusal to permit him to transfer.

As discussed in §4-4, *supra*, the Council of Europe Convention does not establish any criteria which the sentencing and administering countries are required to take into consideration in approving or rejecting transfer requests. Therefore, the Justice Department's exercise of discretion in rejecting transfer requests under the Convention is not subject to review under the Administrative Procedure Act or pursuant to a petition for a writ of *mandamus*.[3] As also discussed in that Section, it should usually be easy for the Department of Justice to articulate reasons for rejecting transfer requests in compliance with Article IV(4) of the Mexican Treaty and similarly worded provisions in many other United States prisoner transfer treaties. Consequently, federal courts are not likely to set aside decisions by the Department of Justice to deny transfers under those treaties.[4]

Article III(6) of the Canadian Treaty, however, affords the Department of Justice little flexibility in approving or rejecting transfer requests. That article limits the Department only to the consideration of "all factors bearing upon the probability that transfer will be in the best interests of the Offender." It does not permit the Department to consider the possible adverse effects of the offender's transfer on United States law enforcement interests. Because this provision establishes a narrow, "meaningful standard against which to judge the [Department's] exercise of discretion,"[5] disapprovals of transfers under the Canadian Treaty should be reviewable under the Administrative Procedures Act.[6]

---

[3] *Bagguley* v. *Bush*, 953 F.2d 660 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 995 (1992). *See also Coleman* v. *Reno*, 91 F. Supp. 2d 130 (D.D.C. 2000); *Brancaccio* v. *Reno*, 964 F. Supp. 1 (D.D.C.), *aff'd*, 1997 U.S. App. Lexis 28499 (D.C. Cir. 1997) (upholding denial of injunctive relief pursuant to Alien Tort Act to applicant for transfer from the United States on the basis of the "unfettered discretion" of the Attorney General to deny transfer under the Council of Europe Convention). *See also* §6-3(1), *supra*.

[4] *See Marquez-Ramos* v. *Reno*, 69 F.3d 477 (10th Cir. 1995); *Lopez-Ortiz* v. *Reno*, No. 94-1460 1995 U.S. App. LEXIS 15112 (10th Cir. 1995).

[5] *Webster* v. *Doe*, 486 U.S. 592, 600 (1988).

[6] The only reported case in which an applicant made such an argument was decided on other grounds. *Hogan* v. *Koenig*, 920 F.2d 6 (9th Cir. 1990) (holding that the rejection of a transfer application of a state prisoner by the State of California was not a violation of the treaty because California is not a party to the treaty and, therefore, is "bound" by the language of Article III(6)). *Id.* at 8.