UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW SLUSS,<br><br>　　　　*Pro se* Petitioner,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE<br><br>　　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 14-759 (CRC)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **RESPONDENT'S MOTION TO DISMISS**

　　　　Respondent, United States Department of Justice ("Respondent"), by and through undersigned counsel, respectfully moves to dismiss this matter pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as *pro se* Petitioner, Matthew Sluss ("Petitioner) does not have standing to bring this action and has failed to state a claim upon which relief may be granted. Respondent attaches a Memorandum of Points and Authorities and a draft Order dismissing this matter.

　　　　*Pro se* Petitioner is advised that if he fails to respond to this motion, the Court may grant this motion and dismiss his case because of the failure to respond. *See Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

　　　　　　　　　　　　　　　　*　　*　　*

Dated: August 25, 2014,
       Washington, DC

                                 Respectfully Submitted,

                                 RONALD C. MACHEN JR., D.C. BAR#447889
                                 United States Attorney
                                 for the District of Columbia

                                 DANIEL F. VAN HORN, D.C. Bar #924092
                                 Civil Chief

                                 By: */s/ Carl E. Ross*
                                 CARL EZEKIEL ROSS, D.C. Bar #492441
                                 Assistant United States Attorney
                                 Civil Division
                                 555 4th Street, N.W.
                                 Washington, D.C. 20530
                                 Tel:  (202) 252-2533
                                 Fax:  (202) 252-2505
                                 Attorneys for Respondent

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MATTHEW SLUSS,  )<br>             )<br>       *Pro se* Petitioner,  )<br>             )<br>   v.          )<br>             )<br>UNITED STATES DEPARTMENT   )<br>OF JUSTICE        )<br>             )<br>       Respondent.   )<br>             ) | Civil Action No. 14-759 (CRC) |

**RESPONSE TO SHOW CAUSE ORDER AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS**

On June 6, 2014, the Court issued a Show Cause Order providing Respondent, United States Department of Justice ("Respondent" or the "Department"), twenty (20) days after it was served to show cause why a writ of mandamus requested by *pro se* Petitioner, Matthew Sluss ("Petitioner) should not be issued.  Petitioner, however, is not entitled to the relief requested and indeed, does not have standing in the instant matter.  Respondent, accordingly, now responds to the Court's Show Cause Order and requests that the Court dismiss this matter.

**BACKGROUND**

Petitioner is serving a prison sentence of 396 months after pleading guilty to one count of advertising child pornography.  *See Sluss v. U.S. Citizenship and Immigration Services et al.*, 899 F.Supp.2d 37, 39n.2 (D.D.C. 2012) (denying Petitioner mandamus relief in an attempt to renounce his citizenship).  After his conviction, Petitioner attempted to renounce his American citizenship but that attempt was rejected.  *See generally Sluss*, 899 F.Supp.2d 37.

On July 2, 2013, Petitioner filed a request to be transferred to Canada to serve out the remainder of his sentence.  *See* Ex 7 to Petition.  On March 5, 2014, the Department denied

Petitioner's request for transfer.  The Chief of the Department's International Prisoner Transfer Unit explained that the request for transfer was denied "because of the seriousness of the offense, because [Petitioner] has become a domiciliary of the United States, because [Petitioner] is a poor candidate due to his criminal history and because [Petitioner] has insufficient contacts with the receiving country."  *See* March 5, 2014 Denial of Request to Transfer Letter, attached hereto as Ex. 1.

Petitioner now moves for habeas relief from the decision rejecting his transfer request.  The decision, however, is in the sole discretion of the Department of Justice and Petitioner does not have standing to challenge that decision.  Respondent now moves to dismiss the petition.

## ARGUMENT

### I. SUMMARY OF THE INTERNATIONAL PRISONER TRANSFER PROCESS.

#### A. Statutory Authority.

In 1977, Congress passed the Transfer of Offenders To or From Foreign Countries Act, 18 U.S.C. §§ 4100, *et seq.* (2008) (the "Act"), "to provide for the implementation of treaties for the transfer of offenders to or from foreign countries."  *See* Act, Pub. L. No. 95-144, 91 Stat. 1212.  Transfers are authorized by the Act only when a treaty providing for such a transfer is in force, and shall only be applicable to transfers of offenders to and from a foreign country pursuant to such a treaty.  *See* 18 U.S.C. § 4100(a).

Pursuant to the Act, the Attorney General is authorized to approve or disapprove individual transfers under international prisoner transfer treaties. 18 U.S.C. §4102(3).  Moreover, the Attorney General is authorized "to make regulations for the proper implementation of such treaties in accordance with this chapter and to make regulations to implement this chapter."  18 U.S.C. § 4102(4).  Notably, the Act does not contain any requirements concerning the timing for

considering applications for international transfer, or substantive standards the Attorney General must use in determining whether to approve such a transfer. Indeed, the Attorney General has unfettered discretion to grant or deny applications for transfer under the Act.[1]

### B. **Prison Transfer Treaties Between the United States and Canada.**

In 1985, the United States and Canada ratified a multinational treaty entitled the Council of Europe Convention on the Transfer of Sentenced Persons, T.I.A.S. No. 10,824, 35 U.S.T. 2867, 1983 WL 472046 (1983) (herein the "Treaty").[2] Article 2 of the Treaty sets forth the mechanics for an international prisoner transfer. "A person sentenced in the territory of a Party may be transferred to the territory of another Party, in accordance with the provisions of this Convention, in order to serve the sentence imposed on him. To that end, he may express his interest to the sentencing State or to the administering State in being transferred under this Convention." Treaty at Art. 2, part (2).

The Treaty also lists necessary conditions precedent which must be satisfied before a sentenced person may be transferred. A sentenced person may be transferred *only* (a) if he is a national of the administering State; (b) if the judgment is final; (c) if he has at least six months to serve on his sentence, or his sentence is indeterminate; (d) if he consents to the transfer; (e) if the

---

[1] Because the Act gives the Attorney General such unfettered discretion, the Act creates no cognizable liberty interest in international prisoner transfers. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("prison regulations [that] place no substantive limitations on official discretion . . . create no liberty interest entitled to protection under the Due Process Clause.").

[2] The U.S. and Canada also have a bilateral treaty for prisoner transfer, which has provisions similar to those of the Treaty and does not include any express provisions regarding the timing of transfer applications. *See* Treaty Between the United States and Canada on the Execution of Penal Sentences, T.I.A.S. No. 9552, 30 U.S.T. 6263 (1977). Moreover, the U.S. and Canada are also parties to the multinational treaty entitled, the Inter-American Convention on Serving Criminal Sentences Abroad, S. Treaty Doc. No. 104-35, 1995 WL 905075 (1995), which also contains provisions similar to those of the Treaty and also includes no timing requirements.

acts for which he was sentenced also constitute a criminal offense if committed in the administering State; and (f) *if the sentencing and administering State agree to the transfer*. Treaty, Art. 3, part (1) (emphasis added).

Although the objective of the Treaty is to transfer prisoners to their own countries, the decision to approve or deny a transfer request is left entirely up to the discretion of the sentencing State. *See id*. Moreover, nothing in the Treaty requires transfer unless the sentencing and administering States agree that transfer is appropriate. *See* Treaty, Art. 3, part (1)(f). The Treaty is also void of any guidelines or factors to consider in determining whether transfer is appropriate, and any requirements as to the timing of applications for transfers.

### C. Delegation to the Office of Enforcement Operations, Criminal Division.

The Attorney General is authorized "to act on behalf of the United States as the authority referred to in a treaty," *see* 18 U.S.C. § 4102(1), and is further authorized "to delegate the authority conferred by this chapter to officers of the Department of Justice." *See* 18 U.S.C. § 4102(11). The Attorney General's authority has been delegated to the Director, Senior Associate Director, and Associate Directors of the Office of Enforcement Operations ("OEO"), Criminal Division, United States Department of Justice. *See* 28 CFR § 0.64-2. The International Prisoner Transfer Unit is within the Office of Enforcement Operations and has the authority to review transfer applications and to recommend approval or denial of an application to the OEO Director and Associate Directors.

## II. RELEVANT STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

"The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]" *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d

84, 86 (D.D.C. 2007) (Lamberth, J.). "When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Bailey v. Mut. of Omaha Ins. Co.*, --- F. Supp. 2d ---, 2008 WL 342667, at *4 (D.D.C. Feb. 08, 2008) (Lamberth, J.) (internal quotations omitted). That is, "Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (Urbina, J.) (internal quotations omitted). Moreover, "[i[n deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007) (Lamberth, J.) (internal quotations omitted).

For the reasons stated below, when this standard is applied to Petitioner's claims, such claims should be dismissed because Petitioner lacks standing.

### B.  Motion to Dismiss for Failure to State A Claim.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Petitioner's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007), *citing Twombly*. Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Petitioner's claim for relief. *Id.* Indeed, "[w]hile a complaint need not plead 'detailed factual allegations,' the factual allegations it does

- 5 -

include 'must be enough to raise a right to relief above the speculative level' and to 'nudge . . . claims across the line from conceivable to plausible.'" *Elemary v. Phillipp Holzmann A.G.*, --- F. Supp. 2d ---, 2008 WL 316376, at *10 (D.D.C. Feb. 6, 2008) (Lamberth, J.), *quoting Twombly*.

The Court must construe the factual allegations in the complaint in the light most favorable to Petitioner and must grant Petitioner the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), *citing Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.* For the reasons stated below, even if this Court has subject matter jurisdiction, Petitioner has failed to plead a claim upon which relief can be granted.

### C. **Mandamus Relief**

Pursuant to 28 U.S.C. § 1361 an action seeking to compel an agency action may be construed as a writ of mandamus. *See* 28 U.S.C. § 1361. This Court retains "original jurisdiction" over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* Mandamus relief is discretionary and typically there must be some "compelling equitable grounds" for mandamus to issue. *Nat'l Shooting Sports Found. v. Jones*, 840 F.Supp. 2d 310, 323 (D.D.C. 2012); *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (explaining that mandamus relief is discretionary). Indeed, "[t]he minimum requirements for a writ of mandamus to issue are: (1) that the plaintiff has a clear and indisputable right to relief, (2) that the defendant has a clear,

nondiscretionary duty to act, and (3) that the plaintiff has exhausted all other avenues of relief and has no other adequate remedy available to him." *Sluss*, 899 F.Supp.2d at 41.  In the end, mandamus relief is viewed as "a drastic remedy, to be invoked only in extraordinary circumstances," *Banks v. Off. of Senate Sergeant-at-Arms and Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1349-50 (D.C. Cir. 2006), and "writs of mandamus compelling agency action are 'hardly ever granted.'"  *Bond v. U.S. Dep't of Justice*, 828 F.Supp.2d 60, 75 (D.D.C. 2011) (quoting *Cheney*, 406 F.3d at 729).

In the instant case, Petitioner is unable to make the showing necessary to justify the extraordinary relief of mandamus.

## III.     PETITIONER LACKS STANDING

Petitioner lacks standing because the applicable Treaty and the Act do not provide Petitioner a private right of action.  "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."  *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1984); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).  Standing is an essential part of the case-or-controversy requirement of Article III, and to have standing, a party must show: (1) an "injury in fact"—an invasion of a ***legally protected interest*** which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the Respondent, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 – 61 (1992) (internal citations and quotations omitted).  In the instant case, Petitioner is unable to show that he has a legally protected interest in an international transfer.

The United States Supreme Court has held that "treaties do not create privately enforceable rights in the absence of express language to the contrary." *Medellin v. Texas*, 552 U.S. 491 (2008).  Nothing in either the Act allowing transfer, the Treaty between the United States and Canada, or the Convention contains express language creating an individually enforceable right.  Indeed, both the Treaty and the Convention provide that transfers will occur ***only when the sending and receiving countries agree*** to the transfer.  *See* T.I.A.S. No. 10,824, 35 U.S.T. 2867, 1983 WL 472046 (1983) (emphasis added).  Since Petitioner's request for a transfer was denied by the Attorney General, acting through the DOJ's International Prisoner Transfer Unit, neither the Treaty's nor the Convention's conditions for transfer were met; and, the Act does *not* give prisoners any right to be transferred independent of the treaty.  *See Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991) (no protected liberty interest in a transfer under the Act or Convention); *Scalise v. Thornburgh*, 891 F.2d 640, 649 (7th Cir. 1989) (the Act does not give rise to a "liberty interest in prisoners seeking international prisoner transfers"); *Coleman v. Reno*, 91 F.Supp.2d 130, 132 (D.D.C. 2000) (dismissing suit to compel Attorney General to accept custody of United States citizen incarcerated in Canada for failure to state a claim).

In the end, Petitioner is unable to establish that Respondent did anything other than exercise its discretion and deny his transfer request based upon "the seriousness of the offense, because [Petitioner] has become a domiciliary of the United States, because [Petitioner] is a poor candidate due to his criminal history and because [Petitioner] has insufficient contacts with the receiving country."  *See* March 5, 2014 Denial of Request to Transfer Letter.  Courts have consistently denied similar attempts to challenge the Department's transfer decisions throughout the country and Respondent respectfully requests that this Court does the same and deny

Petitioner's request. *See Lan Xuan Dang v. Ask-Carlson*, 2013 WL 3424175 at *2 – *3 (E.D. La. July 8, 2013) ("Petitioner has no 'legally protected' individual right to a transfer under the Act, the Treaty, or the Convention [and Petitioner] lacks standing to bring this habeas petition."); *Wirsz v. Sugrue*, 2010 WL 3957500 at *2 – *5 (E.D. Cal. Oct. 8, 2010) ("Petitioner has no 'legally protected' individual right to a transfer," and "[b]ecause he lacks standing, Respondent's motion to dismiss for lack of standing will be granted and the petition must be dismissed."); *Pansing v. Mukasey*, 2008 WL 3861222 at *2 – *4 (S.D.N.Y. Aug. 18, 2008) ("Pansing has not shown a liberty interest that is protected by the Due Process Clause of the Fifth Amendment. Nor has he shown a basis for exercise of mandamus jurisdiction, nor jurisdiction under the Administrative Procedure Act.  He seems not to be arguing that there was a violation of any clause of the treaty known as the COE Convention, nor has he attempted to rebut the argument that he would lack standing to make such an argument.").

## IV.    PETITIONER IS NOT ENTITLED TO MANDAMUS RELIEF

Even if Petitioner had standing in the instant case, he is not entitled to mandamus relief. As previously noted, in order to obtain mandamus relief, Petitioner must show that he has "(1) a clear and indisputable right to relief, (2) that the [Respondent] has a clear, nondiscretionary duty to act, and (3) that the [Petitioner] has exhausted all other avenues of relief and has no other adequate remedy available to him." *Sluss*, 899 F.Supp.2d at 41.  As noted above Petitioner has no legally protected interest in a transfer to another country. *See Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991) (there is no protected liberty interest in a transfer under the Act or Convention).  Furthermore, Petitioner cannot establish that the Department has a "clear, nondiscretionary duty to act" favorably on his transfer request because, by the very terms of the treaties Petitioner relies upon, the decision whether to grant or deny a transfer request is

- 9 -

discretionary.  *See* T.I.A.S. No. 10,824, 35 U.S.T. 2867, 1983 WL 472046 (1983).  In that Petitioner is not entitled to the relief he requests, Respondent respectfully requests that the Court deny Petitioner's request for a writ and dismiss this matter.[3]

## **CONCLUSION**

For the reasons stated above, Respondent respectfully requests that the Court dismiss the Petition with prejudice, or in the alternative, without prejudice.

\* \* \*

---

[3] A federal prisoner may also seek relief via a writ of habeas corpus challenging the manner, location, or conditions of his or sentence.  *See* 28 U.S.C. § 2241.  Indeed, a petitioner is entitled to habeas relief if he is "in custody *in violation* of the Constitution or laws *or treaties* of the United States."  28 U.S.C. § 2241(c)(3) (emphasis added).  As previously stated, the applicable treaties do not compel transfer and Petitioner is unable to show that the Department *violated* the terms of any treaty by denying his transfer request.  Petitioner's writ should, therefore, be dismissed.

Dated: August 25, 2014,
       Washington, DC

Respectfully Submitted,

RONALD C. MACHEN JR., D.C. BAR#447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Civil Chief

By: */s/ Carl E. Ross*
CARL EZEKIEL ROSS, D.C. Bar #492441
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Tel:  (202) 252-2533
Fax:  (202) 252-2505
Attorneys for Respondent

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I served a copy of the foregoing Motion to Dismiss / Response to Show Cause Order, its accompanying exhibit, and draft order via the Court's CM/ECF system which will send a copy to all registered users appearing in this case and also by first class mail on Plaintiff at the following address:

Matthew Sluss
R# 52455-037
FCC PETERSBURG MED.
P.O. Box 1000
Petersburg, VA  23804

on this 25th day of August, 2014.

                                                              */s/ Carl E. Ross*
                                                              CARL E. ROSS
                                                              Assistant United States Attorney
                                                              U.S. Attorney's Office for the
                                                              District of Columbia
                                                              555 Fourth Street, N.W.
                                                              Washington, D.C.  20530
                                                              (202) 252-2533