**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MATTHEW SLUSS**,

                    Petitioner,

          v.                                                    Case No. 14-cv-0759 (CRC)

**UNITED STATES DEPARTMENT OF**
**JUSTICE**,

                    Respondent.

---

**MEMORANDUM OPINION**

          A citizen of one country who is convicted of a crime and sentenced to prison in another

country may be eligible to serve the sentence in his home country.  These international prisoner

transfers are governed by treaties and their associated implementing statutes.  The United States is a

signatory to the Convention on the Transfer of Sentenced Persons ("the Convention"), March 21,

1983, 22 I.L.M. 530, a multilateral treaty that has been ratified by twelve nations, including (as

relevant here) Canada.  Apart from the Convention, the United States has also entered into a series

of bilateral treaties regarding the transfer of prisoners between it and particular countries.  The

United States and Canada executed one such treaty in 1977.  Treaty between the United States of

America and Canada on the Execution of Penal Sentences (the "U.S.-Canada Treaty" or the

"Treaty"), March 2, 1977, 30 U.S.T. 6263.  Our domestic implementing statute—the Transfer of

Offenders to and from Foreign Countries Act, 18 U.S.C. § 4100 et seq.—authorizes the Attorney

General to issue regulations governing inmate transfers under all of these various treaties, id.

§ 4102.  Under that statute, the Attorney General has delegated oversight of prisoner transfer

requests to the Department of Justice's International Prisoner Transfer Unit.  Id.

          Matthew Sluss, a citizen of both the United States and Canada, is serving a lengthy sentence

at the Federal Correctional Institution in Petersburg, Virginia resulting from his 2012 conviction for

advertising child pornography.  See Sluss v. U.S. Citizenship and Immig. Servs., 899 F. Supp. 2d 37, 42 n.2 (D.D.C. 2012).  Mr. Sluss brings this action to challenge DOJ's denial of his request to serve the remainder of his sentence in Canada.[1]  In an earlier ruling dismissing Sluss's complaint, the Court found that DOJ's decision was not judicially reviewable because both the Convention and its implementing statute vest the Attorney General with "unfettered discretion to grant or deny the requested transfer."  Sluss v. U.S. Dep't of Justice, 78 F. Supp. 3d 61, 63 (D.D.C. 2015) (citing Bagguley v. Bush, 953 F.2d 660, 662 (D.C. Cir. 1991)).  After Sluss appealed that ruling, the D.C. Circuit remanded the case for consideration of whether Sluss is entitled to relief under the U.S.-Canada Treaty, which the Court had neglected to address in its opinion.  Mar. 23, 2016 D.C. Cir. Order, ECF No. 38.  Having now considered that issue, the Court finds that the Attorney General's discretion to grant or deny prisoner transfer requests is likewise unreviewable under the U.S.-Canada Treaty.  The Court will therefore again dismiss Sluss's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I.     Background

As noted above, the U.S. and Canada entered a bilateral prisoner transfer treaty in 1977. The Treaty "enable[s] Offenders, with their consent, to serve sentences of imprisonment or parole or supervision in the country of which they are citizens, thereby facilitating their successful

---

[1] Sluss originally styled this action as a Motion for a Writ of Habeas Corpus under 28 U.S.C. § 2241.  However, he only sought relief under the APA.  And, in any event, the Court would lack jurisdiction over Sluss's habeas petition because it does not have personal jurisdiction over the warden of the federal prison in Virginia where he is being held.  See Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir. 2004) (prohibiting district courts from exercising jurisdiction over habeas petitions involving the physical custody of a petitioner when the warden is not within the court's geographical jurisdiction).  The Court therefore previously characterized the action as a civil complaint and instructed Sluss to comply with the corresponding filing requirements.  See May 14, 2014 Order, ECF No. 4; see also Sluss v. U.S. Dep't of Justice, 78 F. Supp. 3d 61, 63, 65 n.3 (D.D.C. 2015).

reintegration into society." 30 U.S.T. 6263.  A prisoner may request a transfer under the Treaty by submitting a written application to the authority of the sending state.  If the sending state approves the request, it sends the application along with its approval to the authority of the receiving state. Id. at art. III § 3.  In deciding whether to approve a request, the Treaty counsels that the determining authority "shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender."  Id. at art. III § 6.  Congress enacted the Transfer of Offenders to and from Foreign Countries Act (the "Act") to implement the United States' obligations under a range of international inmate transfer treaties, including the U.S.-Canada Treaty.  The Act vests the Attorney General with the authority to deny or grant these requests for prisoners held in the United States and U.S. citizens held abroad.  Notably, "the Act does not contain any limits on the exercise of the Attorney General's discretion."  Wirsz v. Sugrue, 2010 WL 3957500, at *2 (E.D.C.A. 2010).

In July 2013, Sluss submitted a transfer request to his prison case manager, asking to serve out the remainder of his sentence in Canada pursuant to the U.S.-Canada Treaty.  Mot. for Writ of Habeas Corpus.  DOJ's International Prisoner Transfer Unit denied that request in March 2014.  In a letter to Sluss, DOJ indicated that it was denying his request "because of the seriousness of the offense, because Applicant has become a domiciliary of the United States, because Applicant is a poor candidate due to his criminal history and because Applicant has insufficient contacts with the receiving country."  Pet'r's Opp'n Resp't Suppl. Br. Supp. Dismissal ("Pet'r's Opp'n") ¶ 3.

Sluss challenges the denial of his transfer request as arbitrary and capricious under the Administrative Procedure Act and seeks a writ of mandamus, under 28 U.S.C. § 1361, to compel DOJ to reconsider the request.  Pet'r's Opp'n 4–5.  The government initially moved to dismiss, but focused its arguments on the relief available to Sluss under the Convention rather than the U.S.-Canada Treaty.  Relying on clearly controlling D.C. Circuit precedent that transfer decisions under the Convention and the Act are "committed to agency discretion by law . . . [and] therefore, not

reviewable [under the APA,]" <u>Bagguley</u>, 953 F.2d at 662, the Court granted DOJ's motion to dismiss on the grounds that Sluss had failed to state a claim.  The D.C. Circuit remanded with instructions to address specifically whether Sluss is entitled to relief under the U.S.-Canada Treaty. The government now renews its motion to dismiss, arguing that Sluss also fails to state a claim under the U.S.-Canada Treaty.

## II.     Standard of Review

Dismissal is warranted if the allegations in Sluss' petition do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  In order to survive DOJ's motion to dismiss, Sluss must have alleged facts that would entitle him to the requested relief.  <u>See</u> <u>Stokes v. Cross</u>, 327 F.3d 1210, 1215 (D.C. Cir.2003).  Although the Court must accept the facts pled as true, legal allegations devoid of factual support are not entitled to this assumption.  <u>See</u> <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III.    Analysis

Under the APA, "a person suffering legal wrong because of agency action . . . is entitled to judicial review" unless the challenged agency action "is committed to agency discretion by law." 5 U.S.C. §§ 701(a)–702.  An action has been committed to agency discretion by law, and is therefore unreviewable, if there is "no meaningful standard against which to judge the agency's exercise of discretion."  <u>Starr Int'l Co., Inc. v. U.S.</u>, 139 F. Supp. 3d 214, 224 (D.D.C. 2015) (internal quotation marks omitted) (quoting <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985)).  The party seeking to preclude judicial review must show by clear and convincing evidence that no meaningful standard exists.  <u>Starr Int'l</u>, 139 F. Supp. 3d at 225.  When deciding that issue, a court "consider[s] both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action."  <u>Sierra Club v.</u>

<u>Jackson</u>, 648 F.3d 848, 855 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting <u>Sec'y of Labor v. Twentymile Coal Co.</u>, 456 F.3d 151, 156 (D.C. Cir. 2006)).  This approach applies equally to treaties.  <u>See</u> <u>Starr Int'l</u>, 139 F. Supp. 3d at 226.

While the D.C. Circuit has not yet had an occasion to consider the reviewability of DOJ's actions pursuant to the U.S.-Canada Treaty, it has confronted transfer decisions under the Convention—a substantially similar treaty implemented by the same Act.  <u>See</u> <u>Bagguley</u>, 953 F.2d at 662.  In <u>Bagguley</u>, the D.C. Circuit joined the Seventh Circuit in holding that the Convention and Act together "give the Attorney General unfettered discretion with respect to transfer decisions . . . [and] [s]uch decisions are, therefore, not reviewable according to 5 U.S.C. § 701(a)(2)."  953 F.2d at 662 (citing <u>Scalise v. Thornburgh</u>, 891 F.2d 640, 648–49 (7th Cir. 1989)).  In light of the D.C. Circuit's remand instructions, the Court's primary task is to determine if the U.S.-Canada Treaty, unlike the Convention, provides any meaningful standards by which to judge the exercise of DOJ's discretion in denying a transfer request.  The Court joins several of its colleagues in finding that transfer decisions under the Treaty are not subject to judicial review.  <u>See, e.g.</u>, <u>Coleman v. Reno</u>, 91 F. Supp. 2d 130, 132 (D.D.C. 2000) (dismissing petitioner's challenge to DOJ's denial of his transfer request under the U.S.-Canada Treaty because it is unreviewable under the APA); <u>see also</u> <u>Toor v. Holder</u>, 717 F. Supp. 2d. 100, 109 n.4 (D.D.C. 2010) (holding that a transfer decision under the Convention is not judicially reviewable and stating that the "substantive similarity of the [Convention and the U.S.-Canada Treaty] makes it unnecessary to analyze both."); <u>Marshall v. Reno</u>, 915 F. Supp. 426 (D.D.C. 1996) (dismissing a <u>Bivens</u> action in part because the transfer process under the U.S.-Canada Treaty is discretionary).

Although the U.S-Canada Treaty provides somewhat more guidance to the Attorney General than either the Convention or Act, it still does not supply a sufficiently objective standard by which to review DOJ's actions.  Sluss can only point to the following treaty provision—not found in the

Convention—as creating a meaningful standard:  "[i]n deciding upon the transfer of an Offender, the authority of each Party shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender."  Art. III § 6, 30 U.S.T. 6263.  The directive "shall," Sluss asserts, requires DOJ to only consider factors related to the prisoner's best interest and limits its discretion to deny a request if it were to find that a transfer would be in the prisoner's best interest.  Pet'r's Opp'n ¶¶ 6–7, 11–12.  But while "shall" is usually interpreted as "the language of command," it cannot be viewed in isolation from its surrounding language.  See Sierra Club, 648 F.3d at 856.  Here, the term only requires DOJ to *bear in mind*, i.e. consider, factors that affect whether a transfer would be in the applicant's best interest.  The provision does not instruct DOJ on what these factors are or how much weight they should be given.  Nor does it exclude DOJ from considering any factors *unrelated* to the best interests of the applicant, such as criminal history or seriousness of offense.  As a result, the U.S.-Canada Treaty, like the Convention, fails to cabin the Attorney General's discretion in any meaningful way.[2]

The Court must also consider "the nature of the administrative action."  Sierra Club, 648 F.3d at 855.  To that end, the D.C. Circuit has recognized that "a broad grant of discretionary authority is particularly appropriate to prison transfer decisions, depending as they do on a variety of considerations."  Bagguley, 953 F.2d at 662; see also Marquez-Ramos v. Reno, 69 F.3d 477, 480 (10th Cir. 1995) ("[T]he particular context in which transfer decisions are made cannot be ignored; such determination have international and political ramifications that cannot be relegated to mere ministerial actions.").  Taking into account both the Treaty text and the nature of inmate transfer

---

[2] Even assuming *arguendo* that this scant provision provides enough of a meaningful standard for judicial review, Sluss still cannot show that DOJ abused its discretion in denying his request because it clearly considered factors related to his best interests, like Sluss's residency in the U.S. and his "insufficient contacts with [Canada]."  See Resp't's Reply 4–5 (citing March 5, 2014 Denial of Request to Transfer Letter).

decisions, the Court concludes that the denial of Sluss's transfer request is not judicially reviewable, and his claim under the APA must therefore be dismissed.  And because DOJ's decision to deny Sluss's transfer request is discretionary, a writ of mandamus is similarly unavailable to him.  See Cox v. Sec'y of Labor, 739 F. Supp. 28, 30 (D.D.C. 1990) ("[I]t is well-settled that a writ of mandamus is not available to compel discretionary acts.") (citing Dunlop v. Bachowski, 421 U.S. 560 (1974)).

## IV.    Conclusion

For the foregoing reasons, Respondent's motion to dismiss under Rule 12(b)(6) for failure to state a claim shall be granted.  A separate Order accompanies this Memorandum Opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   November 18, 2016